**JEWEL COMPANIES, INC., et al., Plaintiffs-Appellees,**

v.

**FEDERAL TRADE COMMISSION, Defendant-Appellant.**

**No. 18258.**

United States Court of Appeals, Seventh Circuit.

Sept. 9, 1970.

J. B. Truly, Asst. Gen. Counsel, E. K. Elkins, Atty., F. T. C., William D. Ruckelshaus, Asst. Atty. Gen., Alan S. Rosenthal, Atty., Dept. of Justice, Harold D. Rhynedance, Jr., Atty., F. T. C., Washington, D. C., for defendant-appellant.

Alex Akerman, Jr., Earl W. Kintner, James F. Rill, Washington, D. C., Theodore A. Groenke, Chicago, Ill., Warren J. Kaps, New York City, Joseph Ryan, Boston, Mass., Eli H. Subin, Orlando, Fla., for plaintiffs-appellees; McDermott, Will & Emery, Myron M. Cherry, Chicago, Ill., John M. Voortman, Arent, Fox, Kintner, Plotkin & Kahn, Mark R. Joelson, James P. Mercurio, Collier, Shannon, Rill & Edwards, Shipley Akerman, Pickett, Stein & Kaps, Rufus W. Peckham, Jr., Washington, D. C., Friedman, Meyers & Keyes, Sylvan Rappaport, Detroit, Mich., Simpson, Thacher & Bartlett, James W. Harrison, Jr., Melvyn L. Cantor, New York City, Lynn, Woodworth & Evarts, Edward J. Duggan, Boston, Mass., Harry E. Jennings, Jr., Bethesda, Md., Stein, Abrams & Rosen, New York City, Roth, Segal & Levine, Orlando, Fla., Beverly & Frates, Don Beverly, West Palm Beach, Fla., of counsel.

Before FAIRCHILD, KERNER and PELL, Circuit Judges.

KERNER, Circuit Judge.

Plaintiffs-appellees, Jewel Companies, Inc., et al., filed suit in the district court seeking to enjoin the defendant-appellant, Federal Trade Commission, from conducting proceedings pursuant to a complaint filed by the Commission charging violations of Section 2(c) of the Clayton Act, 15 U.S.C. § 13(c). The district court entered a temporary restraining order against the Commission and denied the Commission's motion to dismiss. The court, however, certified the question to this court and we granted leave to appeal under 28 U.S.C. § 1292 (b).

Plaintiffs are buyers and "field brokers" of fresh fruits and vegetables. The field brokers perform various services for the buyers "by furnishing information concerning market conditions, by maintaining contact with various sellers, by inspecting and selecting specified qualities and quantities of fresh fruits and vegetables and by negotiating purchases of said products at the most favorable prices." The buyers do not pay for these services. Rather, the field brokers are paid by the sellers. The Commission contends that these facts charge a violation of Section 2(c) of the Clayton Act, as amended by the Robinson-Patman Act, since the sellers pay the field brokers and these brokers are indirectly controlled by the buyers. Two Commissioners dissented from the issuing of the complaint. Specifically, Commissioner Elman in his dissent charged that the issuance of the complaint was not in the public interest and the majority was applying Section 2(c) too strictly. According to Commissioner Elman, the practices in the industry foster competition and lower prices.

Plaintiffs' suit in the district court to enjoin the Commission's proceedings raises four allegations that the Commission in issuing the complaint acted outside its statutory authority: first, the facts as alleged in the Commission's complaint do not as a matter of law state a cause of action under Section 2(c) of the Robinson-Patman Act; second, one of the Commissioners voting for issuance of the complaint misconstrued his discretionary power; third, the Commission did not make a finding that the issuance of the complaint is in the "public interest;" and fourth, the Secretary of Agriculture has exclusive jurisdiction over the subject matter of these complaints under 7 U.S.C. § 499a et seq.

The issue presented is whether the plaintiffs must exhaust their administrative remedies before attacking the authority of the Commission. Section 5 (c) and (d) of the Federal Trade Commission Act, 15 U.S.C. § 45(c) and (d), confer jurisdiction on the court of appeals to review final orders of the Federal Trade Commission and the Com-

mission contends that the district court does not have jurisdiction to entertain attacks on the Commission's authority. Switchman's Union v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). We disagree with this broad stand. In Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), the plaintiff filed suit in the district court claiming that the National Labor Relations Board had no jurisdiction because the company did not conduct business in interstate commerce. The Supreme Court held that the plaintiff must exhaust his administrative remedy since all questions of jurisdiction may be raised in court when and if the Board attempts to enforce an order against the plaintiff. "Obviously, the rule requiring exhaustion of administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless * * *." 303 U.S. at 51, 58 S.Ct. at 464. Cf. McKart v. United States, 395 U.S. 185, 193–194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). While the plaintiff in Myers presented his claim as jurisdictional, the question of whether the company is engaged in interstate commerce is a factual one to be determined in the first instance by the agency charged with enforcing the statute involved. Cf. Lone Star Cement Corp. v. Federal Trade Commission, 339 F.2d 505 (9th Cir. 1964).

In contrast to Myers, the Court in an earlier opinion, Skinner & Eddy Corp. v. United States, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772 (1919), held that the district court had jurisdiction where plaintiffs claimed that the Interstate Commerce Commission's rate increase granted without a hearing violated Section 4 of the Act to Regulate Congress, as amended by Act of June 18, 1910, c. 309, § 8, 36 Stat. 539, 547. The Court reasoned if the plaintiffs had attempted to seek relief before the Commission on the basis that the rates were confiscatory, the Court on review would be bound by the Commission's determination of reasonableness if supported by substantial evidence, but such review would be inadequate where the claim is that the Commission acted outside its statutory authority, 249 U.S. at 562, 39 S.Ct. 375 and, therefore, found jurisdiction. Thus, the difference between Skinner & Eddy and Myers is whether the appellant has an adequate remedy in the court of appeals to review the agency determination.

The Court in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), followed the principle in Skinner & Eddy. The Court concluded that the district court had jurisdiction where the agency had violated its statutory command by failing to allow professional employees to vote on whether they desired to be included in a unit with nonprofessionals, and the professionals had no effective way of presenting the claim of invalidity at any later date. The approach in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), has been broadened by the Court in McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), in a limited situation where "the overriding consideration is that the Board's assertion of power to determine the representation of foreign seamen aboard vessels under foreign flags has aroused vigorous protests from foreign governments and created international problems for our Government." 372 U.S. at 16–17, 83 S.Ct. at 675. The opinion may be "saying between the lines that a court has a discretionary power to require exhaustion or not. * * *" Davis, 3 Administrative Law Treatise, § 20.02 at 23 (1965 Supp.). But see Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964).

Leedom's progeny includes Elmo Division of Drive-X Company v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342 (1965), where the company sought to prevent the Commission from proceeding pursuant to a complaint on the grounds that the Commission was bound by a previous

consent decree "to proceed by way of reopening that case." 348 F.2d at 343. The court held that the procedural error asserted could not be vindicated after the proceedings took place. Under these cases we must decide whether the plaintiffs will have an opportunity to present their claims in the court of appeals and whether that remedy is adequate.

■ Here, plaintiffs present four separate claims alleging that the Commission is acting outside its jurisdiction. Plaintiffs in their complaint first allege that the Commission's complaint does not as a matter of law charge a violation of Section 2(c) of Robinson-Patman. Congress has charged the Federal Trade Commission with enforcement of the Robinson-Patman Act, 15 U.S.C. § 21, and the sufficiency of the complaint must first be challenged in the agency and not in the court. *Cf.* Elmo Division of Drive-X Company v. Dixon, 121 U.S. App.D.C. 113, 348 F.2d 342 (1965). Plaintiffs rely heavily on Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681. However, *Abbott Laboratories* was concerned with review of an industry-wide order which is the end product of the administrative legislative process. Here, we are concerned with the adjudicative process and there is no reason to conclude that the plaintiffs will not have an opportunity to obtain judicial review at the conclusion of the agency's proceedings. We agree with the Commission that the district court has no jurisdiction to determine the merits of this claim.

■ The plaintiffs' second challenge to the jurisdiction of the Federal Trade Commission is that one of the Commissioners did not properly exercise his statutory discretion in voting for the issuance of the complaint. Of the three Commissioners who voted for the issuance of the complaint, Commissioner · MacIntyre construed the Commission's obligation of enforcement under Sections 2(c) and 11 of the Clayton Act, 15 U.S.C. §§ 13(c) and 21, as mandatory when it has "reason to believe" that the Robinson-Patman Act is being violated and that the Commission has no discretion to consider the public interest. Without Commissioner MacIntyre's vote, the complaint could not have issued since two Commissioners dissented. It is plaintiffs' contention that the district court has jurisdiction to decide if Commissioner MacIntyre misconstrued his statutory obligation by assuming he had no discretion to consider whether the issuance of the complaint is in the public interest. *Cf.* Schaffer Transportation Co. v. United States, 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.2d 117 (1951). The question raised is inherently a legal one and does not involve any factual determinations. *Cf.* N.L.R.B. v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). Since the question is one of statutory construction as to the authority of a Commissioner in voting for the issuance of a complaint for violation of Robinson-Patman and does not involve any substantive determination by the Commission, the Commission's reliance on Myers v. Bethlehem Shipbuilding Corp., *supra*, is misplaced. We think the problem here is more analogous to the situation in Skinner & Eddy Corp. v. United States, *supra*. If the question of the Commissioner's obligation is postponed until final appeal of a Commission order, the standard of review will be different. At that point the court of appeals would only decide whether the final order is supported by the evidence and would not question the authority of the Commission in issuing the complaint. As in *Skinner & Eddy*, "the so-called administrative remedy was without relevance to the plaintiff's claim." Jaffe, Judicial Control of Administrative Action, 428 (1965). The legal obligation of a Commissioner can be determined by the courts without delay and we think the proper approach is to allow such inherently legal attacks prior to an agency's final order.[1]

1. While some may characterize this action as one of mandamus since plaintiffs contend that they are entitled to have the Commissioner exercise his discretion, we

**1160**

The existence of an important general question may warrant early review. Where such appeals are allowed they should be expedited lest they be used by the well-heeled to buy time. In formulating this somewhat relaxed attitude toward the exhaustion problem we are recognizing that the situation is no longer what it was when *Bethlehem* was decided. On the one hand there is no longer the same violent disposition to fight the agencies willy-nilly; on the other, we have learned that agency procedures can be as long-drawn out, as wasteful, as oppressive as the worst of judicial procedures. I would hazard a guess that as measured by the vast range of administrative proceedings, there will be very few cases where even with this suggested relaxation of the exhaustion rule, it will not be applied. No doubt there will be lawyers who may still seek premature review for delay or other advantage. No one can deny the possibility of such a danger, and if relaxation of *Bethlehem* even along carefully restricted lines does indeed have this result, it will be necessary to maintain *Bethlehem* in all its rigor. But we can afford to experiment. Jaffe, Judicial Control of Administrative Action, 435 (1965).

For the foregoing reasons we think the district court has jurisdiction to determine whether Commissioner MacIntyre properly interpreted his statutory obligation.

■ The plaintiffs' next challenge to the jurisdiction of the Federal Trade Commission is that the Commission did not find that the issuance of the complaint was in the public interest as is required by Robinson-Patman. There is nothing in the language of Sections 2(c) and 11 of the Clayton Act, 15 U.S.C. §§ 13(c) and 21, in distinction to Section 2(a) of the Clayton Act, 15 U.S.C. § 13

(a) and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which requires a finding that the issuance of the complaint be in the public interest. *Cf.* Leedom v. Kyne, *supra.* While the overall policy of the Federal Trade Commission may be directed toward matters which affect the public, Rule 2.3 of the Commission Procedures and Rules of Practice, 16 CFR § 2.3, any evaluation by the courts in terms of such policies could only be made after all the evidence is in and the Commission has issued a final order. Plaintiffs are attempting to interfere with the discretion of the Commission in issuing its complaint and the courts have no jurisdiction to decide such inherently prosecutorial decisions. Moog Industries, Inc. v. F. T. C., 355 U.S. 411, 78 S.Ct. 377, 2 L.Ed.2d 370 (1958); F. T. C. v. Universal Rundle Corp., 387 U.S. 244, 87 S.Ct. 1622, 18 L.Ed.2d 749 (1967). *See* Byse and Fiocca, *supra,* at 348–49.

■■ The last claim of the plaintiffs is that the Federal Trade Commission is infringing on the jurisdiction of the Secretary of Agriculture under 7 U.S.C. § 499a et seq. The plaintiffs do not claim that the Commission is violating its own statutory commands or its regulations promulgated thereunder. Leedom v. Kyne, *supra.* Section 11 of the Clayton Act, 15 U.S.C. § 21, entrusts enforcement of the Robinson-Patman Act "in the Federal Trade Commission where applicable to all other character of commerce." The scope and breadth of the Commission's power within this broad legislative grant is to be determined after the Commission has concluded its investigation and respondents should not be able to initiate litigation creating prior restraints on the Commission's authority. The district court does not have jurisdiction to determine this claim.

For the foregoing reasons, this case is remanded to the district court for pro-

do not think it improper to proceed by seeking equitable relief. See Byse and Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Non-Statu-

tory" Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308, 331–36 (1967).

ceedings not inconsistent with this opinion.

Affirmed in part, reversed in part.

PELL, Circuit Judge (concurring).

I concur in the results reached in the opinion by Judge KERNER and further concur in the bases on which Judge KERNER reached these results with one exception.

In my opinion, Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), while involving the promulgation of an industry-wide regulation, was posited on the finality of agency action within the meaning of § 10 of the Administrative Procedure Act, 5 U.S.C. § 704. I do not find in the case before us, in the action of the Federal Trade Commission filing a complaint, any elements of finality of administrative action such as were involved in *Abbott*.

Judge KERNER and I agree that plaintiffs' reliance on *Abbott* is misplaced but apparently arrive at that result on a slightly different analysis of *Abbott*.

As indicated, in all other respects I concur in Judge KERNER'S opinion.

FAIRCHILD, Circuit Judge (dissenting).

I respectfully dissent from the portion of the decision which holds that judicial review of the decision to institute the administrative proceeding is appropriate to test the allegation that one commissioner failed to exercise discretion when he voted to issue the complaint. I agree that Jewel's other challenges are not to be considered by a court at this stage.

The relevant statute says, "Whenever the commission * * * shall have reason to believe that any person is violating [provisions of the act], it shall issue * * * a complaint." [1] It is clear that the commission is to act as a body. In this instance there were three votes in favor of a complaint and two against. Jewel seeks to impeach the resulting decision of the commission by showing that one of the three votes was cast under a mistaken belief as to the scope of the discretion which might be exercised.

I would hold inappropriate judicial inquiry into the state of mind or reasoning process of an individual commissioner in order to test the validity of his vote.

Doubtless all would now agree that such inquiry is not to be accomplished by interrogation of administrative officers after the fact.[2]

In this case, however, several commissioners saw fit to make statements in connection with their respective votes. Although reference to contemporaneous statements is less objectionable in some respects than interrogation after the fact, I do not believe this difference provides a justification.

Apparently the commissioners who voted not to issue the complaint took the position that the practices under consideration were not against the public interest even if they were literally subject to the proscription of Section 2(c) of the Clayton Act.[3] These commissioners believe that in such circumstances the commission has the discretion to withhold a complaint. Answering that view, Commissioner MacIntyre said, in part, "Congress did not leave it to the discretion of the Commission to decide as a matter of policy, whether to enforce Section 2 (c) of the Clayton Act where it has 'reason to believe' that the statute is being violated." There is nothing in his statement to indicate that he would have voted against issuance of the complaint had he felt differently on this point.

It may be arguable that Commissioner MacIntyre's statement of the law was in error, but under these circumstances I can see no sufficient justification for

1. 15 U.S.C. § 21(b).

2. United States v. Morgan (1941), 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429.

3. 15 U.S.C. § 13(c).

stalling the administrative proceeding while a court explores the legal theory. And assuming that it is ultimately determined that the proceeding has merit, I think that, although the administrative process would then have been exhausted, there would be no justification for judicial inquiry into the soundness of Commissioner MacIntyre's expressed view.

Our attention has not been called to any decisions in an entirely analogous situation where a court has reviewed the vote of one member of a body in order to decide whether such vote and the action it supported was a nullity. A guide to general policy against such review is found in the principle that courts do not probe the minds of administrative officers to determine whether they read or understood the evidence before the agency.[4] "An institutional decision * * * is a decision made by an organization and not by an individual * * *."[5]

Wilson v. United States[6] and United States ex rel. Accardi v. Shaughnessy[7] involved situations which were different in respects I consider significant.

*Wilson* was an appeal from a conviction for contempt of Congress. One step required by statute in the institution of the prosecution was certification of the matter by the Speaker of the House to the United States Attorney. The conviction was set aside because, although the Speaker had certified the matter after it was presented to him by the committee in question, it was clear that he concluded he had no discretion about doing so. One significant difference is that the official action reviewed in *Wilson* was the act of an individual officer rather than the vote of a member of a body which acted as an entity. The other was that the court found that the interposition of the Speaker's discretion was designed by Congress so that the decision to prosecute would not be made by the particular

committee which the witness had presumably insulted.

*Accardi* did involve a decision of a board, held invalid because of failure to exercise discretion. The decision was the final disposition and seriously affected the rights of the individual involved. In any event the Court did not perform the type of review of the position of an individual member of the board which Jewel seeks here.

In a sense a part of the difference between our case and the two other just mentioned is a matter of degree. In my opinion the legal issue of the scope of discretion in this context is of much too little real significance to justify dissecting the votes of the majority of the commission.

---

4. 2 Davis, Administrative Law Treatise, § 11.05, pp. 57–62.

5. Ibid., p. 36.

6. (1966), 125 U.S.App.D.C. 153, 369 F.2d 198.

7. (1954), 347 U.S. 260, 74 S.Ct. 499, 98 L. Ed. 681.